UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICARDO GARCIA SANTIAGO,<br>Plaintiff,<br>v.<br>GENERAL MOTORS LLC,<br>Defendant. | Case No. 26-cv-02508-BLF<br>**ORDER GRANTING MOTION TO REMAND**<br>[Re: ECF No. 16] |

Plaintiff Ricardo Garcia Santiago filed this lemon-law case in Monterey County Superior Court, alleging that Defendant General Motors LLC ("General Motors") breached certain express and implied warranties concerning a 2025 GMC Sierra purchased by Santiago. Compl. ¶ 6, ECF No. 1.1. General Motors removed the case to this Court based on diversity jurisdiction. ECF No. 1 ("Notice of Removal"). Santiago now moves to remand, arguing that the Court lacks jurisdiction because General Motors' removal was untimely and because it has not established that the amount in controversy exceeds $75,000. ECF No. 16 ("Mot"); *see also* ECF No. 18 ("Reply"). General Motors filed an opposition. ECF No. 17 ("Opp."). The Court finds this motion suitable for resolution without oral argument and VACATES the hearing set for August 27, 2026. *See* Civ. L.R. 7-1(b). For the reasons that follow, the motion to remand is GRANTED.

## I. BACKGROUND

Santiago is, and at all relevant times was, a resident of Seaside, California. Compl. ¶ 2. On or around June 24, 2025, Santiago purchased a 2025 GMC Sierra ("Vehicle") that was manufactured and/or distributed by General Motors. *Id.* ¶ 9. Thereafter, the Vehicle allegedly manifested certain defects that were covered by General Motors' written warranties. *Id.* ¶ 12. However, General Motors purportedly failed to replace the Vehicle or make restitution to

United States District Court
Northern District of California

Santiago. *Id.* ¶¶ 13–15.

Santiago sued General Motors in state court on November 21, 2025, asserting claims under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code § 1790 *et seq*. *See* Compl. ¶¶ 8–33. He seeks, among other things, "actual damages in an amount according to proof," "restitution," "a civil penalty in the amount of two times Plaintiff's actual damages pursuant to Civil Code section 1794(c)," and "costs and expenses of the suit, and for [his] reasonable attorneys' fees, pursuant to Civil Code section 1794(d)." *Id.*, Prayer ¶¶ a–c, f. The complaint was served on General Motors on November 25, 2025. Plata Decl. ¶ 5, ECF No. 16-1.

On December 24, 2025, General Motors filed its answer. *Id.* ¶ 6. On January 30, 2026, Santiago produced a copy of the Vehicle's sales agreement as part of his statutory disclosures under California Code of Civil Procedure § 871.26. *Id.* ¶ 7; Fitch Decl., Ex. A, ECF No. 17-1. The sales agreement specifies the total sales price of the Vehicle, which was not included in the complaint. Plata Decl. ¶ 7; Fitch Decl., Ex. A. On February 23, 2026, Santiago produced a loan payoff letter for the Vehicle indicating that there was approximately $65,506.59 remaining on the vehicle loan. Fitch Decl. ¶ 4 & Ex. C. Santiago does not allege that he ever provided General Motors with information regarding the Vehicle's mileage. *See generally* Mot.; Plata Decl. Instead, General Motors indicates that it determined the Vehicle's mileage and repair history by reviewing its own records. *See* Fitch Decl. ¶ 3.

On March 23, 2026, General Motors removed the case to this Court—118 days after the complaint was served, 52 days after the sales agreement was produced, and 28 days after the loan payoff letter was produced. *See* Notice of Removal. General Motors estimated that the purchase price of the Vehicle was $93,598.75, and that after applicable statutory offsets, the actual damages claimed by Santiago amounted to $83,561.56. *Id.* at 5. The notice also referenced Santiago's prayer for civil penalties and estimated, based on prior experience with similar matters, that attorneys' fees at the time of estimation were likely at least $5,000. *Id.* at 5–6.

Santiago filed the instant motion on April 22, 2026, arguing that General Motors' notice of removal was untimely and that General Motors failed to satisfy its burden to show that the amount

in controversy was satisfied. *See generally* Mot.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They may adjudicate only those cases that the Constitution and Congress authorize them to adjudicate, such as those involving diversity of citizenship or a federal question, or those to which the United States is a party. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Diversity jurisdiction exists when the suit is between "citizens of different States" and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332.

"The mechanics and requirements for removal are governed by 28 U.S.C. § 1446." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1139 (9th Cir. 2013). "Section 1446(b) 'identifies two thirty-day periods for removing a case.'" *Id.* (quoting *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 885 (9th Cir. 2010)). A notice of removal must be "filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b)(1). The Ninth Circuit has explained that for the first thirty-day removal period to apply, "the ground for removal must be revealed affirmatively in the initial pleading." *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 695 (9th Cir. 2005). "The second thirty-day removal period is triggered if the initial pleading does not indicate that the case is removable, and the defendant receives 'a copy of an amended pleading, motion, order or other paper' from which removability may first be ascertained." *Carvalho*, 629 F.3d at 885 (quoting 28 U.S.C. § 1446(b)(3)). Finally, "a defendant who has not lost the right to remove because of a failure to timely file a notice of removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1123 (9th Cir. 2013). The only time limit for the third pathway is that the notice of removal must be filed within one year of the filing of the complaint. *Id.* at 1126; *see also* 28 U.S.C. § 1446(c)(1).

## III. DISCUSSION

Santiago moves to remand the case to state court and for an award of costs and expenses. Mot. at 1. He argues that General Motors' notice of removal was untimely because removability was ascertainable on the face of the complaint or, alternatively, from the sales agreement. *Id.* at 5–8. Alternatively, he argues that General Motors has not met its burden to establish that the amount in controversy exceeds $75,000. *Id.* at 8–10. In opposition, General Motors argues that this action is identical to prior cases decided in its favor because neither Santiago's citizenship nor the amount in controversy are apparent on the face of the complaint or from the sales agreement. Opp at 5, 9–17 (citing *Stewart v. Gen. Motors LLC*, No. 25-cv-07153-SPG, 2025 WL 2848991 (C.D. Cal. Oct. 7, 2025); *Watanabe v. Gen. Motors LLC*, No. 25-cv-07006-SPG, 2025 WL 2848993 (C.D. Cal. Oct. 7, 2025); *Lopez v. Gen. Motors, LLC*, No. 25-cv-06549-MWF, 2025 WL 2629545 (C.D. Cal. Sep. 11, 2025)). General Motors also submits evidentiary support purporting to show that the amount in controversy is satisfied. *Id.* at 17–19. The Court begins by addressing the timeliness issue before turning to whether General Motors has satisfied its burden of proof.

### A. Timeliness of Removal

The 30-day "removal clock does not start until a paper makes a ground for removal 'unequivocally clear and certain.'" *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 (9th Cir. 2021). "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Harris*, 425 F.3d at 694. While a defendant must "apply a reasonable amount of intelligence in ascertaining removability," it "need not make extrapolations or engage in guesswork." *Kuxhausen*, 707 F.3d at 1140 (citation and internal quotation marks omitted).

Santiago argues that General Motors' notice of removal was untimely because the complaint triggered 28 U.S.C. § 1446(b)(1) or, if not, the sales agreement triggered 28 U.S.C. § 1446(b)(3). Mot. at 5–8. General Motors argues that the 30-day removal window was not triggered because neither Santiago's citizenship nor the amount in controversy were "unequivocally clear and certain" from the complaint or sales agreement. Opp. at 14–17. The Court begins by addressing Santiago's citizenship before turning to whether the amount in

controversy was unequivocally clear and certain from the complaint or sales agreement.

**i. Diversity of Citizenship**

Santiago argues that the allegation that he is a resident of Seaside, California, is sufficient to put General Motors on notice that the parties are diverse. Mot. at 2. General Motors argues that the allegation is insufficient to trigger the 30-day removal period because residency is not the same as citizenship for purposes of diversity jurisdiction. Opp. at 14.

An individual is a citizen in the state in which they are domiciled, and "domicile is determined by an individual's . . . residence in state, and . . . his intent to remain indefinitely." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002). "Courts within this district have . . . found that diversity jurisdiction exists based on assertions of residence, absent evidence about domicile to the contrary." *Ervin v. Ballard Marine Constr.*, No. 16-cv-02931-WHO, 2016 WL 4239710, at *3 (N.D. Cal. Aug. 11, 2026). Here, the complaint alleges that Santiago "is, and at all times relevant herein was, a resident of Seaside, California." Compl. ¶ 2. This allegation unambiguously put General Motors on notice of the fact that Santiago is a resident of California and indicated the enduring nature of his residency. General Motors cannot now seriously feign ignorance of Santiago's citizenship on these facts. *See Kuxhausen*, 707 F.3d at 1140 (requiring defendants to "apply a reasonable amount of intelligence in ascertaining removability"); *cf. Mondragon v. Cap. One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013) ("[O]nce established, a person's state of domicile continues unless rebutted with sufficient evidence of change."). Joining other courts in this District, the Court therefore finds that the complaint put General Motors on notice of the fact that the parties are diverse for purposes of 28 U.S.C. § 1446(b)(1). *See Ervin*, 2016 WL 4239710, at *3–4 (holding that the allegation that plaintiff was a resident of Oregon was sufficient to put defendant on notice of plaintiff's citizenship for purposes of 28 U.S.C. § 1446).

General Motors argues that this conclusion is foreclosed by the requirement that the grounds for removal must be "revealed affirmatively" in the complaint or another paper. *Harris*, 425 F.3d at 695; *see also Crisp-Stoot v. Wal-Mart Stores, Inc.*, No. 18-cv-10694-PSG, 2019 WL 1307735, at *2–4 (C.D. Cal. Mar. 22, 2019) (holding that under *Harris* an allegation of residency

United States District Court
Northern District of California

is insufficient to trigger 28 U.S.C. § 1446(b)(1) because a "person residing in a given state is not necessarily domiciled there" (citation and quotation marks omitted)). The Court disagrees. Consistent with the requirements of *Harris*, the complaint affirmatively revealed Santiago's citizenship and indicated that it is enduring without any basis to question Santiago's intent to remain in California. Santiago's citizenship is readily inferable from these facts, which is not in contravention of *Harris* because citizenship is a legal conclusion drawn from the alleged facts, rather than a fact that itself must be plead using magic words. As other courts have recognized, *Harris* is also factually "distinguishable because the complaint in that case only listed the plaintiff's *former residence*, and had no facts regarding residency or citizenship at the time the complaint was filed." *Ervin*, 2016 WL 4239710, at *3 (emphasis in original).

Accordingly, the Court finds that the complaint put General Motors on notice of Santiago's citizenship. The Court therefore next addresses whether either the complaint or sales agreement made it unequivocally clear and certain that the amount in controversy exceeded $75,000.

**ii. The Complaint**

The first thirty-day period is triggered only where the initial pleading itself contains the facts giving rise to removability, without reference to any information or knowledge in the possession of the defendant. *See Kuxhausen*, 707 F.3d at 1139. It is undisputed that the complaint fails to allege the Vehicle's sales price or any other measure of damages specific to this controversy. *See* Mot. at 7 (conceding that "Plaintiff's Complaint does not allege a specific monetary relief figure"). The Court accordingly has no trouble in concluding that service of the complaint did not trigger the thirty-day removal period. *See, e.g.*, *Porter v. Gen. Motors, LLC*, No. 25-cv-07971-RFL, 2026 WL 25958, at *2 (N.D. Cal. Jan. 5, 2026); *Alvarez-Munguia v. Ford Motor Co.*, No. 23-cv-02751-BLF, 2024 WL 69076, at *2–4 (N.D. Cal. Jan. 5, 2024).

Nonetheless, Santiago makes several arguments for why the complaint should have put General Motors on notice as to the amount-in-controversy requirement being satisfied, including that General Motors possesses "sophisticated knowledge of the motor vehicle industry," that Santiago invoked the state court's unlimited jurisdiction in the complaint, and that General Motors had "sufficient information to plausibly allege satisfaction of the jurisdictional threshold." Mot. at

2, 6–7. These are familiar arguments which the Court has recently rejected. *See McMillen v. Gen. Motors LLC*, No. 26-cv-00032-BLF, 2026 WL 1133894, at *2 (N.D. Cal. Apr. 27, 2026). It does so again now. *See id.*; *see also, e.g.*, *Alcazar v. Nissan N. Am., Inc.*, No. 23-cv-01951-JD, 2023 WL 4706167, at *2 (N.D. Cal. July 24, 2023) ("[R]emovability is determined from the pleadings and not the defendant's subjective knowledge."); *Diaz v. Gen. Motors LLC*, No. 25-cv-02208-KK, 2025 WL 3034060, at *3 (C.D. Cal. Oct. 30, 2025) ("[T]he fact that Plaintiff filed an unlimited civil case in state court did not indicate to Defendant the amount in controversy exceeded $75,000."); *Bateman v. Gen. Motors LLC*, No. 25-cv-02696-DFM, 2026 WL 412521, at *4 (C.D. Cal. Feb. 12, 2026) ("[W]hile the Sales Agreement may have made it likely that the amount in controversy requirement was met, 'likely' is not 'unequivocally clear and certain.'" (citation omitted)).

**iii. The Sales Agreement**

If a case is not removable based on the initial pleading, it may be removed within thirty days of receiving a paper from which it may be ascertained for the first time that the action is removable. *See* 28 U.S.C. § 1446(b)(3). The second thirty-day window is triggered when a case is "rendered removable by virtue of a change in the parties or other circumstance revealed in a newly-filed 'paper.'" *Harris*, 425 F.3d at 694. "Applying the 'unequivocally clear and certain' standard, an . . . other paper must make a ground for removal unequivocally clear and certain before the removal clock begins under the second pathway of § 1446(b)(3)." *Dietrich*, 14 F.4th at 1094. While General Motors is not required to "engage in guesswork" to determine the amount in controversy, this standard "requires a defendant to apply a reasonable amount of intelligence in ascertaining removability." *Kuxhausen*, 707 F.3d at 1140.

Under the Song-Beverly Act, the purchaser of a vehicle may obtain restitution equal to "the purchase price paid by the buyer, less that amount directly attributable to use by the buyer." Cal. Civ. Code § 1793.2(d)(1). Additionally, "a plaintiff seeking restitution for a motor vehicle is entitled to the actual purchase price after deducting a mileage offset, payments for optional services and equipment, negative equity, noncash credits, and unpaid financing." *Porter*, 2026 WL 25958, at *3 (citing Cal. Civ. Code § 1793.2(d)(2)(C); Cal. Civ. Proc. Code § 871.27(b)-(d),

(f)). In light of these statutory offsets, a vehicle's sales agreement alone does not trigger removal under the "unequivocally clear and certain" standard. *See Stewart*, 2025 WL 2848991, at *4 ("Plaintiffs disclosed the purchase price of the vehicle, [but] they did not provide information about the vehicle's 'payoff history' or the number of miles driven. . . . Defendant therefore lacked information needed to calculate the available damages."); *Lopez*, 2025 WL 2629545, at *3–4 (same); *McMillen*, 2026 WL 1133894, at *4 (same). Instead, the defendant must receive information with which to ascertain the statutory offsets.

Here, General Motors received a copy of the sales agreement on January 30, 2026, which specified the total sales price of the Vehicle. *See* Plata Decl. ¶ 7. That alone was insufficient to calculate the statutory offsets. Instead, "[t]he only apparent 'paper[s]' that could trigger the second removal period under § 1446(b)(3) [were] the [s]ales agreement . . . together with the loan payoff letter," the latter of which was not produced until February 23, 2026. *McMillen*, 2026 WL 1133894, at *5; *see also* Fitch Decl. ¶ 4. General Motors removed this action on March 23, 2026, which was within 30 days of receiving the loan payoff letter. *See generally* Notice of Removal. Accordingly, the removal was timely.

The Court is unpersuaded by Santiago's cursory argument that the sales agreement triggered 28 U.S.C. § 1446(b)(3), which cites no contrary authority and fails to address the fact that General Motors did not receive any information regarding the statutory offsets. *See* Mot. at 7–8; Reply at 3–4. Instead, Santiago's argument that the amount in controversy is not met confirms that actual damages were not "unequivocally clear and certain" based on the sales agreement alone. Santiago agrees that the Court must consider statutory offsets when deciding whether actual damages satisfy the amount in controversy. *See* Mot. at 9 ("Courts routinely account for this offset when evaluating the amount in controversy."). Moreover, Santiago argues that the amount in controversy is not met, in part, based on "subtracting [the] unpaid financing" that was disclosed in the "loan payoff letter," which confirms that the information in that letter is relevant to damages calculations under the Song-Beverly Act. Reply at 4.

* * *

In sum, neither 28 U.S.C. §§ 1446(b)(1) or (b)(3) were triggered by the complaint or sales

agreement because the amount in controversy was indeterminate. General Motors subsequently removed the case within one year of when it was filed. Accordingly, the case was timely removed to this Court.

**B. Amount in Controversy**

A notice of removal need only plausibly allege that the amount in controversy exceeds $75,000. *See Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020). However, if the plaintiff contests the allegation, the defendant must demonstrate "'by the preponderance of the evidence[] that the amount in controversy exceeds' the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014) (quoting 28 U.S.C. § 1446(c)(2)(B)). "[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if []he prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018).

Santiago argues that General Motors has not established that the amount in controversy exceeds $75,000. *See* Mot. at 8–10. General Motors contends that it has shown that the actual damages, civil penalties, and attorneys' fees collectively exceed this threshold. *See* Opp. at 18–19. Both parties agree that the Court should consider the Song-Beverly Act's statutory offsets when calculating actual damages. *See* Mot. at 9; Opp. at 15. The Court addresses each basis in turn.

**i. Actual Damages**

Santiago purchased the Vehicle with five miles on the odometer for $93,598.75. Opp. at 18; Fitch Decl., Ex. A. Based on when Santiago first presented the vehicle for repair, General Motors estimated a $72.32 mileage offset. Opp. at 18; Fitch Decl., Ex. B. Next, General Motors identified $10,245.00 in other offsets for optional third-party contracts and manufacturer's rebate. Opp. at 18 (citing Fitch Decl. ¶ 2 & Ex. A). Finally, although the payoff letter shows $65,506.59 in unpaid financing, General Motors argues the Court should reduce the unpaid financing figure to $51,530.79 because "it would be reasonable to estimate at least 12 additional monthly payments of $1,164.65 prior to resolution of trial and any appeal." *Id.*; *see also* Fitch Decl. ¶ 4 & Ex. C. In sum, General Motors estimates actual damages of $31,750.64. Opp. at 18.

Santiago disputes the unpaid financing calculation. Reply at 4–5. He argues that the Court

must use the amount of unpaid financing reflected in the payoff letter because the amount in controversy is assessed at the time of removal and it is speculative to assume the case will proceed through trial and appeal. *Id.*

Although "the amount in controversy is assessed at the time of removal," the Ninth Circuit has cautioned that that "does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (emphasis in original). For example, "[f]uture attorneys' fees awards may be included in determining the amount in controversy." *Duffy v. FCA US, LLC*, No. 24-cv-07540-BLF, 2025 WL 3219897, at *3 (N.D. Cal. Nov. 18, 2025) (citation omitted). Neither party addresses where statutory offsets fall on this spectrum or cite any authority addressing this specific question. However, the Court need not decide this issue here. Even assuming General Motors is correct and the Court may consider future payments made by Santiago on the Vehicle, it has not met its burden of proof to show by a preponderance of the evidence that it is "reasonable to estimate at least 12 additional monthly payments of $1,164.65 prior to resolution of trial and any appeal." Opp. at 18. General Motors has not provided any evidentiary basis for this estimate, such as evidence concerning the typical length of a lemon law case. It is purely speculative. Given that it is General Motors' burden to prove that the amount in controversy is met and that, in the Court's experience, lemon law cases typically settle rather than proceeding to trial or appeal, the Court cannot assume that a year's worth of additional payments is a reasonable estimate.

Because General Motors has failed to show by a preponderance of the evidence that the unpaid financing offset is $51,530.79, the Court must rely on the only supported figure that General Motors offers: $65,506.59, as stated in the payoff letter. Using this unpaid financing offset in conjunction with General Motors' other offset calculations, which are uncontested, the estimated actual damages are $17,774.84.

**ii. Civil Penalties**

Santiago seeks "a civil penalty in the amount of two times [his] actual damages pursuant to Civil Code section 1794(c)." Compl., Prayer ¶ c. General Motors argues that the Court must consider these statutory civil penalties as part of the amount in controversy. *See* Opp. at 18–19.

Santiago argues that General Motors must present evidence to show that it is likely that Santiago will be awarded the full penalty. *See* Mot. at 9–10; Reply at 4.

The amount in controversy includes all amounts at stake in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them." *Chavez*, 888 F.3d at 417. And courts have recognized that "it would be odd to require [the defendant] to provide proof that it would be subject to the penalty, an issue for which [the plaintiff] would have the burden of proof at trial." *Porter*, 2026 WL 25958, at *3 (citation omitted) (alterations in original). Accordingly, courts frequently consider the full civil penalty when a plaintiff alleges that the defendant willfully violated the Song-Beverly Act. *See, e.g.*, *id.*; *Diaz*, 2025 WL 3034060, at *5. The Court finds this line of cases persuasive, unlike the cases that Santiago cites which do not account for *Chavez*, and therefore considers the full civil penalty for purposes of calculating the amount in controversy. *See* Mot. at 9 (citing *Estrada v. FC US LLC*, No. 20-cv-10453-PA, 2021 WL 223249, at *3 (C.D. Cal. Jan. 21, 2021); *Chavez v. FCA US LLC*, No. 19-cv-06003-ODW, 2020 WL 468909, at *2 (C.D. Cal. Jan. 27, 2020); *Castillo v. FCA USA*, LLC, No. 19-cv-151-CAB, 2019 WL 6607006, at *2 (S.D. Cal. Dec. 5, 2019)).

When a defendant "has established actual damages by a preponderance of the evidence, the amount of the civil penalty is likewise non-speculative." *Diaz*, 2025 WL 3034060, at *5. Here, the Court has determined that General Motors has established actual damages in the amount of $17,774.84. Thus, the civil penalties at stake are $35,549.68.

* * *

In sum, General Motors has shown by a preponderance of the evidence that the amount in controversy includes $17,774.84 in actual damages and $35,549.68 for the civil penalty. Even assuming General Motors has adequately shown that attorneys' fees are likely to reach $15,000, which Santiago disputes, *see* Mot. at 10; Reply at 6, that puts the amount in controversy at only $68,324.52. Because this falls below the $75,000 threshold for diversity jurisdiction, General Motors has not carried its burden.

United States District Court
Northern District of California

## IV. CONCLUSION

Because General Motors has not met its burden to show that the amount in controversy is satisfied, Santiago's motion to remand is GRANTED. The action is REMANDED to the Monterey County Superior Court. Plaintiff's request for costs and expenses incurred as a result of removal is DENIED because Plaintiff has made no attempt to show that General Motors "lacked an objectively reasonable basis for seeking removal." *Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (citation omitted).

**IT IS SO ORDERED.**

Dated: August 11, 2026

BETH LABSON FREEMAN
United States District Judge